LEWIS RANSOM, PLAINTIFF IN ERROR, VS. THE STATE OF FLORIDA, DEFENDANT IN ERROR.

1. The defendant and four other persons were playing a game of "poker" in a room with cards and chips, the chips being of different colors and varied in values, some of the chips being worth ten cents, the defendant took a percentage off the game, and resided in the room: *Held*, that the evidence was sufficient to sustain the verdict of guilty of keeping a gambling room.

2. The Court charged the jury that if they believed from the evidence that the offence was committed in two years before the filing of the information, they should convict; two years had not elapsed from the date on which the act under which the defendant was convicted took effect, and the filing of the information, but the offence was committed between the date on which the act took effect and the filing of the information; *Held*, that the charge was erroneous, but without prejudice to the defendant.

3. The affidavit of the solicitor to the information conformed to the affidavit prescribed by the statute, and was sufficient.

Writ of Error to the Circuit Court for Duval county.

The facts of the case are stated in the opinion.

*John E. Hartridge*, for Plaintiff in Error.

*The Attorney-General* for Defendant in Error.

MITCHELL, J.: The plaintiff in error was tried and convicted in the County Criminal Court of Record of Duval county, upon information, for keeping a gambling house.

Motions were entered for new trial and to arrest the judgment, which motions were overruled, and the prisoner sentenced to imprisonment in the county jail for three months, and the cause is brought here upon writ of error, and the following errors are assigned: 1. That the conviction in this case was contrary to the evidence; 2. The verdict was contrary to the charge of the Court as given in third, fourth and seventh charges; 3. The Court erred in charging the jury that they could convict if they found that the defendant had committed the offence at any time within two years from the date of the filing of the information; 4. The information was not sworn to, as required by the constitution of the State of Florida.

As to the first assignment. The evidence, in substance, is as follows: That on the 24th day of June, 1889, the defendant and others were in a room in the third story of a building known as the "Abell Block," situated on Bay street, in the city of Jacksonville, playing a game of draw poker. That Smith, a witness for the State, asked permission " to come in the game," but did not have money enough to go in with, but that he gave his money to another person who was playing. That the defendant was sitting at the table and took out a percentage of the game, which witness supposed was for the house. The game was being played for chips. That the "game of poker is a very uncertain game." There is usually one person who takes the per cent. for the house. Either the keeper does this, or some one else does so for him. On cross-examination, this witness, Smith, testified that when he gave his money to be played in the game, he was to participate in whatever was won by the party to whom he gave it, and to share the loss by him, and that he gave the man ninety cents.

Fred Dennis testified for the State, that he had been in a

certain room in the third story of the Abell Block, and that he had seen a game of poker played there for chips. That he could not swear positively that he saw the chips bought; he saw the defendant in the room once or twice; saw him playing in the game. There were five engaged in the game. Saw defendant playing once; he was doing nothing more than other players; did not see any one take a per cent. off the game. This was the time Smith was present; they played with cards; the ordinary playing cards used in games, and with chips. On cross-examination this witness testified that the night he saw the playing going on and played there, Smith, who had testified in this case, was present. It is customary in games of poker, to take out something for the expenses of the game, such as drinks and cigars and room; sometimes for "Jack-pots," and sometimes for trips.

B. L. Gladden, a witness for the State, testified that he had been in a room on the third floor of the Abell Block. At that time a game of draw poker was being played; saw defendant present; he was participating in the game and playing with the others; did not see any per cent. taken off. The game was played with the ordinary playing cards and with chips. The chips were various in colors, and varied in value; could not now give the exact value of each, though he knew the value of one set of chips was ten cents. A table that looked like a dining table, a carpet and ice-box and chairs were in the room; the table was an ordinary one, and may have had a cloth on it, but did not have any hole in the centre for putting chips in. At the time he saw the game played Smith was present; it was in June of this year (1889).

Napoleon Broward, a witness for the State, testified as follows: "I am the Sheriff of Duval county; I know the

defendant; after the defendant was arrested and brought to the Justice's court, he said to me while we were awaiting the commencement of the examination, " I do not keep a gambling house or gambling room; I live in the room."

This is the substance of the evidence in the case, and not a word of it is contradicted by the accused, and, in our opinion, it is sufficient to sustain the finding of the jury, provided the defendant was at the time the keeper of the room in which said game of cards was being played. The defendant was present, and he was the only person shown to have taken out a percentage of the amount for which the game was being played, and when this fact is coupled with the fact testified to by Broward, that the defendant said he lived in the room, his, the defandant's, connection with the room is sufficient, we think, to show that he kept it for the purpose for which it was used, gambling, and hence that it was a gambling room.

Second assignment. We have examined the charge of the Court, and are of the opinion that the verdict conforms to the charge.

Third assignment. We think that the Court erred in charging that the jury should convict if they found that the defendant had committed the offence at any time within two years from the date of the filing of the information, but it was error without prejudice to the accused.

The defendant was convicted under the act of June 7, 1887, entitled "An act to suppress gambling houses and gambling," and the evidence in this case shows that the offence of which the defendant was convicted, occurred on the 24th day of June, 1889, the time between the date on which the act took effect, and the day on which the defendant was convicted being less than two years, but the evidence also shows that the offence was committed after the

act took effect, and before the filing of the information. This being the case, the defendant was legally convicted, notwithstanding the erroneous charge of the Court, and he had no legal cause of complaint.

Fourth assignment. The affidavit to the information conforms to that prescribed by the statute, and is sufficient. Tuberson vs. State, decided at present term.

The judgment is affirmed.